IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-802

 Filed: 4 December 2018

New Hanover County, No. 15CRS051090

STATE OF NORTH CAROLINA

 v.

TYLER DEION GREENFIELD, Defendant.

 Appeal by Defendant from judgments entered 23 February 2017 by Judge

Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of

Appeals 8 February 2018.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Jess D.
 Mekeel, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Kathryn L.
 VandenBerg, for the Defendant.

 DILLON, Judge.

 Defendant appeals his convictions for first-degree felony murder and for

assault with a deadly weapon with intent to kill inflicting serious injury

(AWDWIKISI). For the following reasons we reverse the judgments and remand as

follows: (1) with respect to the AWDWIKISI conviction, Defendant is entitled to a

new trial; and (2) with respect to the first-degree felony murder conviction, the trial

court shall vacate that judgment and enter judgment convicting Defendant of second-

degree murder.
 STATE V. GREENFIELD

 Opinion of the Court

 I. Background

 Defendant was convicted of assault and murder for shooting two victims,

killing one of them, during a drug deal gone bad.

 On 2 February 2015, Defendant was at Jon’s1 home to buy marijuana. Jon’s

girlfriend, Beth, was also there. The State’s evidence tended to show that Defendant

shot Jon and Beth while trying to rob Jon.

 Defendant, however, testified as follows: Defendant went to buy marijuana

from Jon. While in Jon’s living room, Defendant picked up a gun from Jon’s coffee

table which he thought “looked cool.” As Defendant was inspecting Jon’s gun, Beth

became nervous and pointed a gun at Defendant. Defendant then threatened to shoot

Beth if Beth did not put her gun down. Beth put down her gun, and Defendant turned

to leave. As Defendant was leaving, Jon shot at Defendant. Fearing for his life,

Defendant returned fire, intending to shoot Jon but not intending to shoot Beth.

Some of Defendant’s return fire killed Jon and injured Beth.

 Defendant was tried for killing Jon and for assaulting Beth. The jury was

instructed on the doctrine of “transferred intent.” The jury was also instructed on

“self-defense” as to the murder charge but not the assault.

 For Jon’s death, the jury indicated on the verdict sheet that it had found

Defendant guilty of both first-degree felony murder (based on the felony of

 1 Pseudonyms are used to protect the identities of the victims.

 -2-
 STATE V. GREENFIELD

 Opinion of the Court

AWDWIKISI) and of second-degree murder. Based on this verdict, the trial court

entered judgment convicting Defendant of the greater charge, first-degree felony

murder.

 For the assault on Beth, the jury found Defendant guilty of AWDWIKISI. The

trial court entered judgment based on this verdict.

 The trial court sentenced Defendant to life imprisonment without parole.

Defendant timely appealed.

 II. Analysis

 Defendant argues that the trial court committed four errors. We conclude that,

except with respect to error in the jury instruction, the trial court did not commit

reversible error, as explained in Section II. A. below.

 We conclude that the trial court did commit reversible error in its jury

instructions resulting in Defendant’s convictions for the assault of Beth and the first-

degree felony murder of Jon. However, we conclude that the error did not affect the

jury’s verdict that Defendant had committed second-degree murder when he shot Jon.

Accordingly, for the reasons stated in Section II. B. below, we vacate the judgments

entered convicting Defendant of assault and first-degree felony murder and remand

for a new trial on the assault charge for the assault on Beth and for entry of judgment

for second-degree murder for the death of Jon.

 A. Defendant’s Arguments Concerning Closing Argument and Evidence

 -3-
 STATE V. GREENFIELD

 Opinion of the Court

 Defendant makes three arguments, unrelated to the jury instructions, which

we conclude do not warrant relief on appeal. We address each in turn.

 1. Prosecutor’s Closing Argument

 Defendant argues that the trial court failed to intervene ex mero motu

concerning two statements made by the prosecutor during closing arguments.

 Defendant complains of the prosecutor’s statement that “[t]he reason we’re

here [is that] the defendant will not accept responsibility for his actions.” Defendant

argues that “[t]he prosecutor’s statement invited the jury to hold against [Defendant]

his invocation of his constitutional right to plead not guilty and to stand trial before

an impartial jury.” Our Supreme Court, however, has held that constitutional

arguments regarding closing instructions which are not objected to are waived:

 Defendant seeks a new trial on the ground that the court’s
 errors [in not intervening ex mero motu during the
 prosecutor’s closing based on the State and Federal
 constitutions and on N.C. Gen. Stat. § 15A-1230].

 Because defendant did not object to any of these arguments
 below, no constitutional argument could have been
 presented to the trial court. As noted above, failure to raise
 a constitutional issue at trial generally waives that issue
 for appeal. [Citations omitted.] Accordingly, we will
 review these purported errors for a violation of N.C.G.S. §
 15A-1230.

State v. Phillips, 365 N.C. 103, 135, 711 S.E.2d 122, 145 (2011).

 Here, Defendant did not object to the prosecutor’s statement. Therefore, we

are compelled to conclude that Defendant has failed to preserve any constitutional

 -4-
 STATE V. GREENFIELD

 Opinion of the Court

argument concerning the prosecutor’s statement. And unlike the defendant in

Phillips, Defendant here has not made any argument under N.C. Gen. Stat. § 15A-

1230. Further, we conclude that any error in this regard did not amount to plain

error. Therefore, Defendant’s argument concerning this statement is overruled.

 Defendant also complains of the prosecutor’s statement that “[p]erhaps

[Defendant] had [the weapon] in some other robbery [and] discharged it then.” This

statement suggests that Defendant may have committed another offense, though

there is no evidence that he had done so. The State contends the statement was

relevant to the prosecution’s theory that Defendant had disposed of the weapon

shortly after the shooting, which was evidence of Defendant’s guilt.

 Defendant did not object to the statement. Where there is no objection, our

standard of review is whether the remarks were “so grossly improper that the trial

court committed reversible error by failing to intervene ex mero motu.” State v. Trull,

349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998).

 We have reviewed the prosecutor’s statement in context with the entire closing

argument, and we conclude that the statement, if improper, was not so grossly

improper to require intervention by the trial court. In so holding, we note other cases

where similar or more inflammatory statements were held not to require intervention

by the trial court. See, e.g., State v. Marino, 229 N.C. App. 130, 135, 747 S.E.2d 633,

637 (2013) (holding that a prosecutor’s speculation “that this was not the first time

 -5-
 STATE V. GREENFIELD

 Opinion of the Court

defendant had driven impaired,” while improper, did not warrant a new trial). See

also State v. Oxendine, 330 N.C. 419, 423, 410 S.E.2d 884, 886 (1991). Therefore, we

conclude that the trial court did not commit reversible error by failing to intervene ex

mero motu during the prosecutor’s closing argument.

 2. Evidence Concerning Character of the Victim

 Defendant argues that the trial court erred in excluding evidence that the

deceased victim (Jon) was a gang leader, had a “thug” tattoo, and had previously been

convicted of armed robbery. Defendant contends that he had offered this evidence to

show Jon’s violent character which would be relevant to his self-defense argument.

Defendant argues that the evidence was admissible under Rules 404(a) and 405(b) of

our Rules of Evidence and that the trial court’s refusal violated his constitutional

right to present his defense.

 Rule 404(a) provides that an accused may offer evidence of “a pertinent trait of

[the victim’s] character.” N.C. Gen. Stat. § 8C-1, Rule 404(a) (2017). Our Supreme

Court has stated that a defendant claiming self-defense “may produce evidence of the

victim’s character tending to show [] that the victim was the aggressor” and may be

done so “through testimony concerning the victim’s general reputation for violence[.]”

State v. Corn, 307 N.C. 79, 85, 296 S.E.2d 261, 265-66 (1982).

 Rule 405 of our Rules of Evidence provides how character evidence may be

offered. N.C. Gen. Stat. § 8C-1, Rule 405 (2017). Rule 405(a) states that evidence

 -6-
 STATE V. GREENFIELD

 Opinion of the Court

concerning the victim’s reputation may be offered. Id. Rule 405(b) states that

evidence concerning “specific instances of [the victim’s] conduct” may be offered. Id.

Defendant specifically argues that his evidence concerning Jon’s character was

admissible under Rule 405(b); he makes no argument under Rule 405(a).

 We conclude that the evidence concerning Jon’s gang membership, his

possession of firearms, and his tattoo do not involve “specific instances of conduct”

admissible under Rule 405(b). Therefore, we conclude that the trial court did not err

by excluding this evidence. Further, we note that there was evidence presented to

the jury that Jon was a drug dealer and possessed multiple guns in his residence at

the time of the shooting.

 Regarding the victim’s prior conviction for armed robbery, the trial court

specifically ruled that the evidence was inadmissible under Rule 403, based on its

conclusion that unfair prejudice outweighed the probative value of the evidence.

State v. Coffey, 345 N.C. 389, 404, 480 S.E.2d 664, 673 (1996) (stating that the trial

court may still exclude otherwise admissible evidence if it determines that “its

probative value [is outweighed by] the danger of unfair prejudice”). Whether

otherwise admissible evidence should be excluded under Rule 403 is left to the sound

discretion of the court. State v. Hoffman, 349 N.C. 167, 184, 505 S.E.2d 80, 90-91

(1998). Here, Defendant has made no argument that the trial court erred in excluding

 -7-
 STATE V. GREENFIELD

 Opinion of the Court

Jon’s prior conviction under Rule 403. Therefore, we conclude that Defendant failed

to meet his burden on appeal as to this issue.

 3. Detective’s Opinion Testimony

 Defendant argues that the trial court committed plain error by allowing a

detective testifying for the State to express his “opinion [that Defendant] had already

confessed to felony murder.” Our Supreme Court has stated that it reviews

“unpreserved issues for plain error when they involve either (1) errors in the judge’s

instructions to the jury, or (2) rulings on the admissibility of evidence.” State v.

Gregory, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Under Rule 10(a)(4) of our

Rules of Appellate Procedure, an appellant must demonstrate that a “judicial action”

amounted to error. Presumably, here, Defendant is arguing that the trial court

should have intervened to strike the detective’s testimony concerning his belief that

Defendant had confessed to felony murder. Assuming, arguendo, that the trial court

committed error, we conclude that the argument is moot in light of our reversal of

Defendant’s felony murder conviction, as explained in Section II. B. below. Further,

assuming that the argument is not moot, we conclude that any error by the trial court

was not “so basic, so prejudicial, so lacking in its elements that justice cannot have

been done,” and, therefore, did not rise to the level of plain error. State v. Odom, 307

N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

 B. Jury Instructions on “Transferred Intent” and “Self-Defense”

 -8-
 STATE V. GREENFIELD

 Opinion of the Court

 We conclude that the jury instructions require us to vacate Defendant’s

convictions for the assault of Beth and the first-degree felony murder of Jon, but not

for the jury’s verdict finding Defendant guilty of the second-degree murder of Jon.

But before discussing our conclusions regarding the jury instructions as to each

charge specifically, we first discuss generally the “transferred intent” and “self-

defense” instructions given to the jury.

 1. Transferred Intent

 The trial court gave a general instruction on “transferred intent.” Our

Supreme Court has described transferred intent as follows:

 It is an accepted principle of law that where one is engaged
 in an affray with another and unintentionally kills a
 bystander or a third person, his act shall be interpreted
 with reference to his intent and conduct towards his
 adversary. Criminal liability, if any, and the degree of
 homicide must be thereby determined. Such a person is
 guilty or innocent exactly as [if] the fatal act had caused
 the death of his adversary. It has been aptly stated that
 “The malice or intent follows the bullet.”

State v. Wynn, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971).2 Therefore, under the

“transferred intent” rule, if a defendant shoots at A in the heat of passion, without

malice, but hits B, he is guilty of voluntary manslaughter. If he shoots A in self-

defense but hits B, he is not guilty by reason of self-defense.

 2 This holding in Wynn regarding “transferred intent” was most recently affirmed by our
Supreme Court in 1998 in State v. Davis, 349 N.C. 1, 37, 506 S.E.2d 455, 475 (1998) and by our Court
just last year in State v. Cox, ___ N.C. App. ___, ___, 808 S.E.2d 339, 348 (2017).

 -9-
 STATE V. GREENFIELD

 Opinion of the Court

 The instruction regarding transferred intent given in this case was an accurate

statement of the law. The trial court told the jury:

 If the defendant intended to harm one person but instead
 harmed a different person, the legal effect would be the
 same as if the defendant had harmed the intended victim.

This instruction, as given, allowed the jury to convict Defendant for killing Jon even

if they believed Defendant was intending to shoot Beth when he hit Jon. And it

allowed the jury to convict Defendant for assaulting Beth even if they believed

Defendant was intending to shoot Jon when he hit Beth.

 2. Self-Defense

 The State’s evidence tended to show that Defendant shot both Jon and Beth

during a robbery attempt. Defendant admitted that he shot Jon and Beth, but only

to protect himself. Specifically, Defendant testified that (1) Jon shot first; (2)

Defendant then returned fire in self-defense as he tried to escape the room in fear

that Jon was going to kill him; and (3) Defendant was only trying to hit Jon in his

return fire; he was not shooting at Beth.

 When instructing on the homicide of Jon, the trial court instructed the jury

that it could find Defendant not guilty or guilty of a lesser charge based on self-

defense. But the trial court did not instruct the jury on self-defense with respect to

the assault on Beth. The instruction on this count, coupled with the transferred

intent instruction, created a likelihood of confusion within the jury. Based on our

 - 10 -
 STATE V. GREENFIELD

 Opinion of the Court

State’s jurisprudence, as explained below, the application of self-defense does not

turn on whom Defendant actually shot, but rather on whom he intended to shoot.

That is, as explained below, Defendant was entitled to a self-defense instruction on

the homicide of Jon and the assault of Beth, but only if the jury determined that those

crimes were committed with shots intended for Jon.

 Defendant was not entitled to any self-defense instruction for the shots which

the jury determined he intended for Beth, whether they struck Beth or Jon.

Defendant was not so entitled because he testified that he did not intend to hit Beth,

but that he was only shooting at Jon. Defendant also testified that he was only in

imminent fear of being killed by Jon. He testified that Beth had already put down

her gun before he returned fire. See, e.g., State v. Cook, ___ N.C. App. ___, ___, 802

S.E.2d 575, 577 (2017), affirmed per curiam, 370 N.C. 506, 809 S.E.2d 566 (2018)

(holding that a defendant was not entitled to a self-defense instruction where he

testified that he was not intending to shoot the victim when he fired the gun).

 But based on Defendant’s testimony, he was entitled to the self-defense

instruction for all the shots he intended to fire at Jon, whether they actually killed

Jon or injured Beth. That is, based on Defendant’s testimony that Jon was shooting

at Defendant, Defendant was entitled to the self-defense instruction with regard to

any shots the jury determined he intended for Jon and which hit Jon. And based on

 - 11 -
 STATE V. GREENFIELD

 Opinion of the Court

the “transferred intent” instruction, Defendant was also entitled to a “self-defense”

instruction with regard to any shots intended for Jon but which actually struck Beth.

 C. Jury Verdicts and Judgments

 1. Count 1 – Homicide of Jon

 On Count 1, Defendant was charged with Jon’s homicide. The trial court

instructed the jury on a number of theories, including first-degree felony murder,

first-degree premeditation/deliberation murder, second-degree murder, and

voluntary manslaughter.

 On its verdict sheet, the jury checked boxes indicating that it was finding

Defendant guilty of both first-degree felony murder, based on the felony of

AWDWIKISI, and of second-degree murder. Based on this verdict (and because

Defendant only killed one person), the trial court entered judgment only on the

greater charge, first-degree felony murder.

 a. First-Degree Felony Murder Judgment – Reversible Error

 We conclude that the jury instructions concerning first-degree felony murder

based on AWDWIKISI constituted reversible error because the instructions allowed

the jury to convict Defendant on this theory even if they believed that Defendant had

intended to shoot Jon rather than Beth with the fatal shot(s). Specifically, it would

be error for the jury to base its felony murder conviction for the killing of Jon on a

felony that Defendant was intending to assault Jon.

 - 12 -
 STATE V. GREENFIELD

 Opinion of the Court

 Where a defendant intentionally assaults A with a gun which causes A’s death

(and there is no other felony involved), the State cannot elevate an otherwise act of

second-degree murder or voluntary manslaughter to first-degree murder based solely

on the fact that the defendant committed the deadly assault with a deadly weapon.

Otherwise, every instance where a defendant commits a homicide with a gun would

constitute first-degree felony murder.3

 Based on a holding by our Supreme Court, however, if the jury believed that

Defendant intended to shoot Beth with the shot(s) that killed Jon, the jurors were

free to convict Defendant of first-degree felony murder based on AWDWIKISI.

Specifically, in State v. Terry, our Supreme Court held that a defendant who fires a

deadly weapon at A (Beth, in our case), but hits B (Jon), is guilty of first-degree felony

murder of B (Jon), based on the fact that the defendant was committing the felony of

assault with a deadly weapon on A when he killed B. State v. Terry, 337 N.C. 615,

622, 447 S.E.2d 720, 723-24 (1994). Though this holding seems to be in direct conflict

 3 If every homicide involving a deadly weapon were elevated in this manner, a defendant who
shoots his spouse in the heat of passion, without premeditation and deliberation, would be liable for
first-degree felony murder rather than simply voluntary manslaughter. Or a defendant who shoots
and kills someone with malice, but without premeditation and deliberation, would still be guilty of
first-degree murder rather than second-degree murder. Such results are clearly not the intent of the
General Assembly, nor are they reflected in our Supreme Court’s jurisprudence.

 - 13 -
 STATE V. GREENFIELD

 Opinion of the Court

with the “transferred intent” rule stated by our Supreme Court in Wynn, we are

bound to follow it.4

 We, however, cannot determine from the jury instructions or from the verdict

sheet whether the jury believed Defendant, when he shot Jon, was intending to shoot

Jon or intending to shoot Beth. That is, the instructions did not clearly inform the

jury that it could find Defendant guilty of first-degree felony murder based on

AWDWIKISI only if it determined that the fatal bullet was meant for Beth. And

there was evidence presented from which the jury could have inferred either finding.

Therefore, we conclude that the jury instructions with respect to Defendant’s

conviction for first-degree felony murder constituted reversible error.

 b. Second-Degree Murder Verdict – No Reversible Error

 In addition to finding Defendant guilty of first-degree felony murder for Jon’s

death, the jury also found Defendant guilty of second-degree murder. As stated

above, the trial court entered judgment only on the first-degree felony murder verdict.

 Second-degree murder occurs where a defendant kills another human being

with malice. State v. Williams, 288 N.C. 680, 691, 220 S.E.2d 558, 567 (1975). Where

the defendant uses a deadly weapon to commit an assault, malice can be presumed.

 4In Terry, the Supreme Court did not apply its “transferred intent” rule to determine
defendant’s culpability when he fired at A but shot B. Rather, the Court held that first-degree felony
murder was appropriate, notwithstanding whether the defendant shot with premeditation or merely
in the heat of passion. Accordingly, it could be argued that Terry conflicts with the statement in Wynn
that “the malice or intent follows the bullet.”

 - 14 -
 STATE V. GREENFIELD

 Opinion of the Court

State v. Lang, 309 N.C. 512, 525-26, 308 S.E.2d 317, 323-24 (1983). “[A] pistol or a

gun is a deadly weapon.” State v. Benson, 183 N.C. 795, 799, 111 S.E. 869, 871 (1922).

 In this case, on the charge of second-degree murder, the jury was instructed on

self-defense. We conclude that, for this jury verdict, there was no reversible error. It

does not matter whether the jury believed Defendant was shooting at Jon or at Beth

when he killed Jon. If the jury believed Defendant was shooting at Jon, the verdict

is valid because the jury was given the opportunity to acquit based on self-defense,

but declined to do so. And if the jury believed that Defendant shot Jon while trying

to shoot Beth, he was not entitled to a self-defense instruction with respect to any

shot intended for Beth because he testified that he was not in imminent fear of Beth.

 c. Mandate on Homicide Count

 We vacate the judgment convicting Defendant guilty of first-degree felony

murder. But since there was no reversible error with respect to the second-degree

murder verdict, based on the reasoning of our Supreme Court in State v. Stokes, we

remand for entry of judgment convicting Defendant of second-degree murder.5 State

v. Stokes, 367 N.C. 474, 479-80, 756 S.E.2d 32, 36 (2014).

 2. AWDWIKISI of Beth

 5 In Stokes, our Supreme Court cited a line of cases with approval where there was evidence
to support a conviction of a greater charge, but the instructions left out an essential element of that
greater charge, resulting in an instruction on a lesser charge. State v. Stokes, 367 N.C. 474, 479-80,
756 S.E.2d 32, 36 (2014). The Court held that it was appropriate to remand for entry on the lesser
charge. Id.

 - 15 -
 STATE V. GREENFIELD

 Opinion of the Court

 The trial court instructed the jury that it could convict Defendant of

AWDWIKISI for the injuries to Beth. The trial court did not give an instruction of

self-defense as to this charge. This was error because we do not know if the jury

determined that the shot that struck Beth was meant for Jon, which may have been

legally justified under self-defense, or if it was meant for Beth. That is, with the

transferred intent instruction, it is possible that the jury convicted Defendant of

AWDWIKISI, though believing that Defendant intended all his shots to hit Jon, as

he testified. And based on transferred intent, he should have been acquitted if the

jury believed he was firing at Jon in self-defense. As our Supreme Court stated in

Wynn with respect to transferred intent: “Such a person is guilty or innocent exactly

as [if] the fatal act had caused the death of his adversary.” Wynn, 278 N.C. at 519,

180 S.E.2d at 139 (emphasis added).

 The State might argue that the failure to instruct on self-defense was not

prejudicial because the jury must have determined that Defendant did not shoot at

Jon in self-defense based on the finding of guilt for second-degree murder. But this

ignores the possibility that the jury found Defendant guilty of second-degree murder

for shots intended for Beth, for which he was not entitled to any self-defense

instruction, and that the jury found Defendant guilty of assaulting Beth with shots

intended for Jon, for which he was entitled to a self-defense instruction. We simply

cannot know what the jury was thinking. Therefore, Defendant is entitled to a new

 - 16 -
 STATE V. GREENFIELD

 Opinion of the Court

trial with respect to the assault charge. On remand, assuming the evidence is the

same, the jury must be instructed on self-defense for the shots the jury believed were

intended for Jon that hit Beth.

 III. Conclusion

 The judgments below are vacated. Defendant is entitled to a new trial with

respect to the AWDWIKISI conviction. Regarding the first-degree felony murder

conviction, we remand for entry of judgment convicting Defendant of second-degree

murder.

 VACATED AND REMANDED.

 Judge INMAN concurs.

 Judge STROUD dissents by separate opinion.

 - 17 -
No. COA17-802 – State v. Greenfield

STROUD, Judge, dissenting.

 I concur in the result of the majority opinion in granting defendant a new trial

on AWDWIKISI, but I dissent on the remainder of the charges because I would grant

defendant a new trial on all charges. The facts and resulting various charges were

somewhat confusing on their own, but the jury instructions and verdict sheet only

made the case more confusing by muddling the issues, elements, and legal standards

applicable to each charge. Portions of the jury instructions misstated the law and

overall the instructions are likely to have misled the jury. Although some portions of

the jury instructions are correct statements of the law, it is not possible to separate

the AWDWIKISI conviction from the tangled mess of theories and charges. I would

therefore reverse and grant a new trial on all charges.

 I briefly restate the background since it is important to an understanding of

the issues and appropriate jury instructions. On 2 February 2015, defendant and a

friend went to Jon’s6 home to buy marijuana. An altercation started and shots were

fired by at least three guns. Jon ultimately died from gunshot wounds. Defendant

and Jon’s girlfriend, Beth, were also shot but survived. The State and defendant

presented different theories at trial on what happened between defendant’s arrival

at Jon’s home and the shootings. The State’s theory of the case was that defendant

6 Pseudonyms will be used to protect the identity of the participants who were not charged with a
crime in this case and the deceased victim.
 STATE V. GREENFIELD

 STROUD, J., dissent

and his friend attempted to rob Jon and murdered him: defendant attempted to rob

Jon at gunpoint; Beth grabbed a gun; defendant threatened to shoot Jon in the head

if Beth did not put her gun down; Beth put the gun down; and defendant began firing,

striking both Jon and Beth. Defendant’s theory of the case was self-defense: he went

to buy marijuana from Jon and saw a gun on the coffee table; he picked it up to look

at it because it “looked cool” “like something off a movie[;]” Jon “started going

crazy[;]” Beth grabbed a gun and pointed it at defendant; defendant threatened to

shoot if Beth did not put the gun down; Beth put the gun down; defendant turned to

run and Jon shot him; defendant began shooting behind himself “as many times as I

can till I got to the door.”

 Defendant was indicted for first and second-degree murder and attempted

robbery with a dangerous weapon of Jon and the attempted first-degree murder and

assault with a deadly weapon with intent to kill inflicting serious injury

(“AWDWIKISI”) of Beth. Defendant argued self-defense to the jury. The jury found

defendant guilty of first-degree felony murder with the underlying felony being

assault, second-degree murder, and AWDWIKISI. The trial court sentenced

defendant to life imprisonment without parole. Defendant appealed.

 Defendant challenges the jury instructions regarding self-defense. Defendant

contends the trial court should have provided a self-defense instruction for the

AWDWIKISI and felony murder charges. Defendant argues that

 2
 STATE V. GREENFIELD

 STROUD, J., dissent

 [b]y limiting the jury instructions so that self-
 defense could not be applied to the assault charges against
 . . . [Beth] – standing alone or underlying the felony-murder
 charge – the trial court usurped the jury’s function, and Mr.
 Greenfield was denied his right to present a defense and to
 a trial by jury.

Defendant specifically contends that within the trial court’s self-defense instruction

it should have included his proposed instruction on transferred intent because

defendant’s “intent of defending himself against . . . [Jon] transferred to the shooting

of . . . [Beth].”7

 We review jury instructions as a whole to determine if the law was presented

correctly and to ensure that the jury was not misled regarding the applicable law:

 This Court reviews jury instructions
 contextually and in its entirety. The charge
 will be held to be sufficient if it presents the
 law of the case in such manner as to leave no
 reasonable cause to believe the jury was
 misled or misinformed. Under such a
 standard of review, it is not enough for the
 appealing party to show that error occurred in
 the jury instructions; rather, it must be
 demonstrated that such error was likely, in
 light of the entire charge, to mislead the jury.
 If a party requests a jury instruction which is
 a correct statement of the law and which is
 supported by the evidence, the trial judge
 must give the instruction at least in

7 Under the doctrine of transferred intent “[i]t is an accepted principle of law that where one is engaged
in an affray with another and unintentionally kills a bystander or a third person, his act shall be
interpreted with reference to his intent and conduct towards his adversary. . . . . Such a person is guilty
or innocent exactly as if the fatal act had caused the death of his adversary. It is aptly stated that the
malice or intent follows the bullet.” State v. Goode, 197 N.C. App. 543, 550, 677 S.E.2d 507, 512 (2009)
(citation, quotation marks, and brackets omitted).

 3
 STATE V. GREENFIELD

 STROUD, J., dissent

 substance.

State v. Cornell, 222 N.C. App. 184, 190–91, 729 S.E.2d 703, 708 (2012) (citation,

ellipses, and brackets omitted). This Court’s review of the jury instructions as a

whole is conducted de novo. See State v. Cruz, 203 N.C. App. 230, 235, 691 S.E.2d

47, 50, aff’d per curiam, 364 N.C. 417, 700 S.E.2d 222 (2010) (“Our Court reviews a

trial court’s decisions regarding jury instructions de novo.”).

 The trial court must instruct the jury on self-defense if
 there is any evidence in the record from which it can be
 determined that it was necessary or reasonably appeared
 to be necessary for defendant to kill his adversary in order
 to protect himself from death or great bodily harm.
 Moreover, the trial court must provide a self-defense
 instruction if the above criteria is met even though there is
 contradictory evidence by the State or discrepancies in the
 defendant’s evidence. With regard to whether a defendant
 is entitled to a jury instruction on self-defense, the trial
 court must consider the admissible evidence in the light
 most favorable to the defendant.
 Before the defendant is entitled to an
 instruction on self-defense, two questions
 must be answered in the affirmative: (1) Is
 there evidence that the defendant in fact
 formed a belief that it was necessary to kill his
 adversary in order to protect himself from
 death or great bodily harm, and (2) if so, was
 that belief reasonable? If both queries are
 answered in the affirmative, then an
 instruction on self-defense must be given. If,
 however, the evidence requires a negative
 response to either question, a self-defense
 instruction should not be given.

Id. at 235-36, 691 S.E.2d at 50-51 (citations, quotation marks, and brackets omitted).

 4
 STATE V. GREENFIELD

 STROUD, J., dissent

 The trial court did not provide a self-defense instruction in general on the

AWDWIKISI or felony murder charge; furthermore, the trial court did not provide a

transferred intent instruction on the one self-defense instruction it did provide on

first and second-degree murder and voluntary manslaughter. Thus, the only specific

self-defense instruction the jury received was as to Jon, and not to Beth:

 The defendant would be excused of first-degree
 murder on the basis of malice, premeditation, and
 deliberation, and second-degree murder on the ground of
 self-defense if, first, the defendant believed it was
 necessary to kill the victim in order to save the defendant
 from death or great bodily harm.
 And second, the circumstances as they appeared to
 the defendant at the time were sufficient to create such a
 belief in the mind of a person of ordinary firmness.

 The State does not argue that defendant did not present evidence which would

support his theory of self-defense, but only that defendant was not credible and that

since the trial court instructed the jury on self-defense as to some of the charges, the

jury instructions as a whole were sufficient. This argument fails for two reasons. The

defendant’s credibility is not a consideration for this Court; that is a determination

for the jury to make. See State v. Hannon, 118 N.C. App. 448, 451, 455 S.E.2d 494,

496 (1995) (“It is fundamental to a fair trial that the credibility of the witnesses be

determined by the jury.”). Also, when reviewing a trial court’s failure to instruct

jurors on a self-defense theory, this Court must consider the evidence in the light

most favorable to defendant. See Cruz, 203 N.C. App. at 235, 691 S.E.2d at 51.

 5
 STATE V. GREENFIELD

 STROUD, J., dissent

Defendant’s evidence presented at trial, if believed, would support an instruction of

self-defense on both the AWDWIKISI and felony murder charges as he testified: he

went to Jon’s home to buy marijuana, with no intent to rob anyone; Jon became so

upset when he picked up a gun to look at it that Beth intervened pointing a gun at

him; and he was the first person shot, as he was trying to run away, shooting back

only to defend himself.

 Thus, the jury retired to deliberate with the self-defense instruction applying

only to “COUNT 1” for “First-Degree Murder with Premeditation and Deliberation

Or Second-Degree Murder Or Voluntary Manslaughter” against Jon. Further

compounding the lack of a self-defense instruction, the State’s closing argument

repeatedly stressed that self-defense could not be used for felony murder stating,

 Premeditation, deliberation, malice. These are all concepts
 we’ll talk about in just a second, but they don’t apply to
 felony murder. Also what doesn’t apply is self-defense. Self-
 defense also doesn’t apply to felony murder. . . .
 . . . Self-defense does not apply to felony murder. Again,
 stress that over and over again. There’s not a need to apply
 self-defense to felony murder that the defendant is charged
 with.

 Thus, with these confusing instructions and statements from the State, the

jury retired to deliberate with a somewhat confusing verdict sheet. The verdict sheet

presented options for eight different theories of murder or manslaughter under

COUNT 1, and the jury was instructed on self-defense as applied to only three of

those eight theories. The verdict sheet with the jury’s answers to the various theories

 6
 STATE V. GREENFIELD

 STROUD, J., dissent

shows the following for the crimes listed under COUNT 1:

 COUNT 18

 Guilty of First-Degree Murder;

 Under the felony-murder rule, determine whether the defendant committed:
 (Mark all that apply)

 _____ Attempted Robbery

 _____ Attempted First-Degree Murder

 Assault with a Deadly Weapon with Intent to Kill Inflicting Serious

 Injury

 _____ Assault with a Deadly Weapon Inflicting Serious Injury

 _____ Assault with a Deadly Weapon with Intent to Kill

_____ Or Not Guilty

 Or

_____ First-Degree Murder with Premeditation and Deliberation

 Or

 Second-Degree Murder

 Or

_____ Voluntary Manslaughter

8 The verdict sheet did not identify the victim of each Count. Jon was the victim of each crime under
Count 1, but four of the underlying felonies could have been regarding Beth. The crimes against Beth
were therefore identified both in Count 1, as potential felonies to support felony murder, and
separately in Counts 2 and 4 for attempted first-degree murder and the three forms of assault.

 7
 STATE V. GREENFIELD

 STROUD, J., dissent

 Or

_____ Not Guilty

The verdict sheet is confusing, even to this Court. The jury indicated its confusion as

well when it wrote a note to the court asking, “Please explain why it matters that we

address both theory’s since it[’]s for the same count? Why is there an ‘or’ instead of

an ‘and’ in the charge sheet.”

 Adding one more layer of confusion, instead of giving the self-defense

instructions as requested by defendant, the trial court instead instructed the jury on

accident “[a]s to the charges of attempted murder and assault with a deadly weapon

with intent to kill inflicting serious injury of” Beth. After the instructions were given,

defense counsel noted his objection to the accident instruction:

 the language in it that an injury is accidental if it’s
 unintentional, and Judge, I believe that under self-defense
 an act under self defense would be an intentional act, just
 that it would lawfully be an intentional act.

 THE COURT: I understand what you’re saying
 but I did not give a self-defense instruction for that.

 MR. SHOTWELL: I understand, but I’m saying
 under the theory that if his actions were lawful under self-
 defense, then by definition they would be intentional.

 Thus, in summary, the trial court’s instructions deliberately separated the

instruction for first-degree murder based on premeditation and deliberation, second-

degree murder; and voluntary manslaughter for which self-defense would apply from

 8
 STATE V. GREENFIELD

 STROUD, J., dissent

the felony murder instructions for which self-defense would not apply. The trial court

then instructed on accident, although there was no evidence to support this

instruction, and did not instruct on self-defense for AWDWIKISI and felony murder,

though there was evidence to support those instructions. Ultimately, the jury found

defendant not guilty of attempted robbery with a deadly weapon and did not use this

as the basis for the felony murder conviction; this part of the verdict indicates that

the jury did not believe the State’s theory of the case that defendant went to Jon’s

home and attempted to rob him. The jury actually found defendant guilty of felony

murder based only on “Assault with a Deadly Weapon with Intent to Kill Inflicting

Serious Injury[;]” this is the same crime they found defendant guilty of committing

against Beth; this is the crime for which defendant unsuccessfully requested a self-

defense instruction.

 Overall, considering the instructions in their entirety, with the lack of a self-

defense instruction which was supported by the evidence, the inclusion of an accident

instruction which was not supported by the evidence, the State’s jury argument

emphasizing that self-defense could not be used for felony murder, the layout of the

verdict sheet and the jury’s question about it, and the not guilty verdict as to

attempted robbery with a deadly weapon, I would conclude the jury may have been

“misled” by the jury instructions and the result may have been different if the jury

 9
 STATE V. GREENFIELD

 STROUD, J., dissent

had been instructed on self-defense as to AWDWIKISI. Generally Cornell, 222 N.C.

App. at 191, 729 S.E.2d at 708.

 I would therefore reverse defendant’s convictions and grant defendant a new

trial on all charges.

 10